IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger

Civil Action No. 16-CV-1775-MSK-NYW

**DRYWAVE TECHNOLOGIES USA, INC.,**

    Plaintiff,

*v*.

**MESSAGE INTERNATIONAL, LTD.,
KENT MOERK,
RICHARD SMEE, and
JOSEPH MCGOWAN,**

    Defendants,

*and*

**KENT MOERK,
RICHARD SMEE, and
JOSEPH MCGOWAN,**

    Counterclaim Plaintiffs, and

**DRYWAVE SPECIAL PURPOSE FUND LLC,**

    Intervening Plaintiff,

*v*.

**DRYWAVE TECHNOLOGIES USA, INC.,
DRYRX LLC,
STEVE HOWE,
NICKOLAY KUKEKOV, and
TODD HOWE,**

    Counterclaim Defendants.

**OPINION AND ORDER ON MOTION TO DISMISS COUNTERCLAIMS**

1

**THIS MATTER** comes before the Court on a Motion to Dismiss Counterclaims (**# 96**), Response (**# 99**), and the Reply (**# 100**).

## I. JURISDICTION

The Court has jurisdiction to hear this case under 28 U.S.C. § 1332.

## II. BACKGROUND

Drywave Technologies USA Inc. (Drywave) was a startup company that made deep-tissue massage beds. This controversy is between two groups that tried to determine its future. The Plaintiffs/Counterclaim-Defendants are Drywave and its original officers and directors (the Drywave parties), as well as DryRX LLC, an entity owned by Todd Howe. The Defendants/Counterclaim-Plaintiffs are Joseph McGowan and fund he created — Drywave Special Purpose Fund (DSPF), which provided funding to Drywave — and Moerk and Smee, who invested time as consultants and employees of Drywave (the Investors).

According to the Amended Complaint **(#14),** as a condition of funding, McGowan required Drywave to hire certain employees or board members. Drywave contends that the Investors conspired to interfere with Drywave's business.

According to the Counterclaims (**# 89**),[1] the Investors were misled in making investments in and in accepting employment by Drywave based upon misleading financial information and false promises of future compensation made by Drywave's officers and directors Nickolay Kukekov, Steve Howe, and T. Howe. Ten Counterclaims are brought:

(1) fraudulent misrepresentation (DSPF, Moerk, and Smee v. Drywave, S. Howe, and Kukekov);

---

[1] The Court recounts and accepts as true the well-pled facts alleged in the Counterclaims (**# 89**). *See Dudnikov v. Chalk & Vermilion Fine Arts Inc.*, 514 F.3d 1063, 1069–70 (10th Cir. 2008).

(2) negligent misrepresentation (DSPF, Moerk, and Smee v. Drywave, S. Howe, and Kukekov);

(3) securities fraud under C.R.S. § 11-51-501 (DSPF v. Drywave, S. Howe, and Kukekov);

(4) securities fraud under Section 10(B) of the Exchange Act (DSPF v. Drywave, S. Howe, and Kukekov);

(5) breach of contract (Smee v. Drywave);

(6) breach of contract (Moerk v. Drywave);

(7) abuse of process (all Investors v. Drywave, S. Howe, and Kukekov);

(8) breach of promissory notes and standstill agreement (DSPF v. Drywave);

(9) fraudulent transfer (DSPF, Moerk, and Smee v. all Drywave Parties); and

(10) civil conspiracy (DSPF, Moerk, and Smee v. all Drywave Parties).

The Drywave Parties have moved to dismiss Claims 1 and 2 as against S. Howe and Kukekov, Claims 3, 4, and 7 as to all Drywave Parties, and Claims 9 and 10 as to S. Howe, Kukekov, T. Howe, and DryRX.

### III. LEGAL STANDARD

In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept all well-pleaded allegations in the complaint as true and view those allegations in the light most favorable to the nonmoving party. *Stidham v. Peace Officer Standards & Training*, 265 F.3d 1144, 1149 (10th Cir. 2001) (quoting *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999)). The Court must limit its consideration to the four corners of the complaint, any exhibits attached thereto, and any external documents that are incorporated by reference. *See Smith v. United States*, 561 F.3d 1090, 1098

(10th Cir. 2009). However, a court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity. *Alvarado v. KOB-TV LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007).

A claim is subject to dismissal if it fails to state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To make such an assessment, the Court first discards those averments in the complaint that are merely legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements. The Court then takes the remaining, well-pleaded factual contentions, treats them as true, and ascertains whether those facts (coupled, of course, with the law establishing the requisite elements of the claim) support a "plausible" as compared to a "conceivable" claim. *See Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

## IV. DISCUSSION

### A. Claims 1 and 2 — Fraudulent and Negligent Misrepresentation

These claims allege that the Drywave Parties misrepresented or failed to disclose material financial information about Drywave to DSPF, Moerk, Smee and McGowan. The information was material to the financial investments made by McGowan's entities and to Moerk's and Smee's agreement to be employed by Drywave. The Motion to Dismiss contends that these claims are insufficiently pled in accordance with Rules 8(a) and 9(b), that some alleged representations are opinion rather than fact, and that some alleged representations identified were not made to Mr. Moerk.

To prove a claim under Colorado law for fraudulent misrepresentation, a plaintiff must establish that (1) the defendant knowingly misrepresented a material fact, (2) he justifiably relied on the misrepresentation, and (3) he suffered damage as a result of such reliance. *See Barfield v.*

*Hall Realty Inc.*, 232 P.3d 286, 290 (Colo. App. 2010). To prove a claim for negligent misrepresentation, a plaintiff must allege that (1) the defendant supplied false information in a business transaction, (2) the defendant failed to exercise reasonable care or competence in communicating that information, and (3) that he justifiably relied upon the false information. *Campbell v. Summit Plaza Assocs.*, 192 P.3d 465, 477 (Colo. App. 2008).

The Court begins with the lowest standard for adequate pleading — Rule 8(a). It requires that plaintiffs to put facts to paper so defendants have notice of the conduct giving rise to the claim. *See Mann v. Boatright*, 477 F.3d 1140, 1148 (10th Cir.2007). This rule invokes notice pleading, but does not require extensive detail that arguably "connects all of the dots". The Drywave Parties do not contend that the allegations are too sparse; to the contrary, they complain that they are voluminous, overly detailed and "littered" with allegations of representations, which makes them burdensome to address.

Such criticism has some merit, but the Counterclaims nevertheless set out a straightforward, chronological version of the events, acts, and conduct giving rise to the parties' dispute and legal claims. The chronological recitation of facts contains many representations but they are also separately identified as "Misrepresentations" at Paragraphs 117 through 129. There is no showing that the Drywave Parties are unable to understand the nature of the allegations or that they are unable to appropriately respond. Thus, there is no reason to dismiss the Counterclaims under Rule 8.

Rule 9(b) is at the other end of the spectrum. It requires that allegations of fraud be pled with particularity — "the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 726–27 (10th Cir. 2006). However, the

5

requirements of Rule 9(b) must be read in conjunction with the principles of Rule 8, which requires that pleadings "be construed to do substantial justice." Fed. R. Civ. P. 8(e)–(f); *Seattle-First Nat'l Bank v. Carlstedt*, 800 F2d 1008, 1101 (10th Cir. 1986). The purpose of Rule 9(b) is "to afford defendant fair notice of plaintiff's claims and factual ground upon which [they] are based". *Schwartz v. Celestial Seasonings*, 124 F3d 1246, 1252 (1997). Review of the entire complaint or counterclaims is often necessary to determine whether fraud is sufficiently pleaded. A dismissal for failure for failure to adequately plead particulars in accordance with Rule 9(b) is akin to a dismissal for failure to state a claim, curable by amendment.

It is helpful to note that the facts alleged in the Counterclaims do not resemble the typical situation where a publically-traded company publishes disclosures that include false misrepresentations or omissions. The parties to this litigation are not strangers relying upon documents as their means of communication. Instead, Drywave is a closely held company that sought financing and consulting advice. The principals of Drywave were well acquainted with the investors and consultants, and worked together until disagreements developed. Indeed, this lawsuit resembles a "business divorce" in which the parties disagree on what happened, but are well aware of the conversations and communications that are now alleged to be misrepresentations.

The Drywave Parties globally complain that allegations set out in the chronological formatting and separate listing of "Misrepresentations" suffer from a variety of defects. They are too general, too conclusory, and some of them are not actionable because they are opinions or pertain to future events. In addition, the Drywave Parties complain that the some of the alleged misrepresentations are not actionable by all of the Investors.

The Court declines to address these arguments in detail for several reasons. First, nowhere in the argument is there a good-faith suggestion that the Drywave Parties or their counsel do not understand the allegations nor that they are unable to respond to them. It appears that this objection is largely based on form rather than substance. Second, the critique is, itself, conclusory and inspecific. The Drywave Parties begin with conclusions and then follow with "examples". Most striking is the statement that the "remaining allegations regarding misstatements are conclusory and similarly lacking in particularity" which is followed by parentheses enclosing a list of numbered paragraphs from the Counterclaims. This approach does not identify the allegation that is deficient, how it is deficient, nor why the allegation remains deficient when read with the remainder of the facts alleged in the Counterclaims. The Court declines the invitation to undertake the job of the Drywave Parties to specify each pleading deficiency and to explain why it is so severe as to deprive Drywave Parties of fair notice of the facts upon which the Investors rely.

The Court will limit itself to the single argument made as to a specific allegation. The Drywave Parties complain that the allegation that "Kukekov and S. Howe falsely represented to McGowan that Drywave would be ready for a reverse merger at the end of 2014" (# 89 ¶ 122) is deficient because it does not identify when, where, or how Kukekov and S. Howe made this statement, let alone particular facts showing that it was false. This allegation does not stand alone, however. Without comprehensively scouring the Counterclaims, the Court notes that references to reverse mergers and representations appear elsewhere (¶¶ 17–21, 30, 32, 44–45). Read together, it is clear that the subject representations were allegedly made by Kukekov and S. Howe in Spring 2014, made orally by Kukekov and through documentation prepared by Highland Research Advisors, and by S. Howe through an email dated July 7, 2014. The

7

location where the statement was made is not stated, but it is not clear that location is of any relevance. The significance of the statement is evident — the ability to go through a reverse merger indicates the marketability of the company and the fact that it has sufficient financial stability to be traded on the stock exchange. The deficiencies in this allegation do not require dismissal of Claims 1 and 2.

Similarly, the fact that not all of the alleged misrepresentations were made by all of the Drywave Parties and that not all of the Investors relied on the same misrepresentations does not require dismissal of these Claims. To be sure, the allegations could, and perhaps should, be organized differently but Court declines to dismiss them to correct their formatting at this stage in the litigation.

**B. Claim 3 — Securities Fraud Under the Colorado Securities Act**

This claim alleges that the Drywave Parties' misrepresentations violate the Colorado Securities Act. Under Colorado law, it is unlawful for any person, in connection with the offer, sale, or purchase of any security, to directly or indirectly employ a scheme to defraud, make any untrue statement of a material fact or omit a material fact necessary to make the statements not misleading, or engage in any act that operates or would operate as a fraud upon any person. C.R.S. § 11-51-501(1).

This claim draws on the same well of factual allegations as the misrepresentation claims, so the Drywave Parties raise the same objections as they did to Claims 1 and 2. To the extent that the motion is premised on the same pleading deficiencies and challenges as to actionability that were made with regard to Claims 1 and 2, it is denied for the same reasons.

## C. Claim 4 — Securities Fraud Under the Securities Exchange Act

This claim is brought against all Drywave Parties alleging that their misrepresentations also violate the Securities Exchange Act. The Securities Exchange Act requires a plaintiff to allege:

> (1) the defendant made an untrue or misleading statement of material fact, or failed to state a material fact necessary to make statements not misleading; (2) the statement complained of was made in connection with the purchase or sale of securities; (3) the defendant acted with scienter, that is, with intent to defraud or recklessness; (4) the plaintiff relied on the misleading statements; and (5) the plaintiff suffered damages as a result of his reliance.

*In re Level 3 Commc'ns Sec. Litig.*, 667 F.3d 1331, 1333 (10th Cir. 2012). The level of scienter required to support a § 10(b) claim is intent to deceive, manipulate, or defraud. Alternatively, proof of recklessness is sufficient. *City of Philadelphia v. Fleming Cos.*, 264 F.3d 1245, 1259–60 (10th Cir. 2001). The PSLRA imposes a heightened pleading standard for such claims. A claim must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1).

The Drywave Parties argue that the Claim 4 does not satisfy the stringent pleading requirements of the Private Securities Litigation Reform Act (PSLRA). This is correct. The level of generality that is acceptable for fraud claims is not sufficient for the PSLRA because the Investors must specify the scienter as to each misrepresentation. This claim does not identify which of the many alleged misrepresentations fall within it and fails to make any allegation as to the scienter appropriate to each. Although the Investors properly rely upon Rule 10(c) to incorporate prior factual allegations into the claim, there is no affirmative statement as to whether any of the alleged misrepresentations were made with an intent to defraud or

9

recklessness. Because this claim does not fairly advise the Drywave Parties of the facts upon which the Investors rely, it is dismissed.

### D. Claim 7 — Abuse of Process

This claim alleges that the filing of instant lawsuit constitutes improper use of the legal process because (1) Drywave waited to serve McGowan for 192 days, (2) the suit aims to intimidate and coerce the Investors out of initiating an involuntary bankruptcy case against Drywave, and (3) the suit lacks factual merit. The Drywave Parties argue that, even if Drywave's suit was the result of an improper motive, the Investors cannot show that through the lawsuit they have improperly employed permissible process.

A claim for abuse is governed by Colorado law. It lies where (1) a party initiates judicial proceedings (2) in an effort to obtain collateral results that would not be proper in the regular course of the proceedings (3) which results in damages. *Aztec Sound Corp. v. Western States Leasing Co*., 510 P. 2d 897,899 (1973): *James H. Moore & Assocs. Realty Inc. v. Arrowhead at Vail*, 892 P.2d 367, 373 (Colo. App. 1994) (citing Restatement (Second) of Torts § 682, cmt. b (1965)). The essence of the claim is the use of a legal proceeding in a improper manner – for example, by threatening to give wide publicity to a complaint in order to extort payments from the defendant. *See Cardy v. Maxwell,* 9 Misc 2d 329, 169 N.Y.S. 2d 547 (1957). Or, where a party records liens against his adversary, not because the filer claims an interest in the property, but in order to compel the adversary to concede a child-custody proceeding. *See Arrowhead*, 892 P.2d at 373. If, however, the action is confined to its regular and legitimate function, there is no abuse, even if the plaintiff has an ulterior motive in bringing the action. *See Inst. for Prof'l Dev. v. Regis College*, 536 F. Supp. 632, 635 (D. Colo. 1982).

In assessing the allegations of this claim, the Court assumes, without deciding, that the action was initiated with an ulterior objective. However, there are no allegations that, if true, establish that it has been used for that purpose. The first allegation of abuse of process is that this action was filed to force a settlement (# 89 ¶ 174). It is fair to say that settlements often arise out of lawsuits, but this allegation fails to identify what process has been misused and how settlement would be inconsistent with the regular judicial proceedings. The second allegation is that the Drywave Parties brought claims to intimidate, harass, corerce, extort cooperation from and decrease the amount owed to DSPF, Moerk, and Smee. (# 89 ¶ 175). This alleges only ulterior motive, but no improper use of process during the lawsuit. The third allegation is that the Drywave Parties knew that the Investors intended to file an involuntary bankruptcy petition against Drywave and this action was designed to delay or prevent such filing (# 89 ¶¶ 176–79). Again, the allegation pertains to motive, but alleges no improper conduct in this lawsuit.

Because the Investors have not alleged facts showing that the Drywave Parties used any particular legal tool improperly, they have failed to state a claim upon which relief can be granted. Accordingly, the claim is dismissed, without prejudice.

**E. Claim 9 — Fraudulent Transfer**

This claim is brought under the Colorado Uniform Fraudulent Transfer Act (CUFTA). C.R.S. § 38-8-101 *et seq*. It alleges that Drywave transferred $1.5 million that had been invested by DSPF to DryRX, an entity owned by T. Howe while Drywave was insolvent (or it was rendered insolvent) and that the transfer was made with the intent to hinder, delay and defraud creditors. *See* C.R.S. § 38-8-105(1)(a). Alternatively, it alleges that the transfer was made with Drywave receiving reasonable equivalent value. *See* C.R.S. § 38-8-105(1)(b). The Drywave Parties argue that the claim should be dismissed against each of them because it is not properly

11

pleaded, and against S. Howe, Kukekov, and T. Howe because no recovery can be had against them under CUFTA.

The Drywave Parties' objections premised on Rules 8(a) and 9(b) are not well founded. As to Rule 8, the allegations are simple and straight forward. It is not necessary to identify which provision is applicable to the claim because only one provision fits the alleged facts. As to Rule 9(b), it is not clear that the heightened pleading requirements of such rule are applicable to all fraudulent conveyance claims. First, it is important to note that fraudulent conveyance claims are not the same as fraud claims. But, in addition, there are two different flavors of fraudulent conveyance claims. The first arise from transfers of property based made with an intent to hinder, delay and defraud creditors. The second are based on transfers of property for less than fair consideration.

As to the second type of transfer, Rule 9(b) generally does not apply. *In re Vaughan Co. Realtors*, 481 B.R. 752, 757, 763 (Bankr. D.N.M. 2012). But as to the first type of transaction, there is some disagreement among courts. Some apply a strict standard of pleading that requires identification of the property transferred, the transferor, the transferee and the date of the transaction. *See In re Greater Se. Cmty Hosp. Corp I*, 341 B.R. 91 (Bankr. D.D.C. 2006). Other courts take a more lenient approach finding that the complaint must simply allege sufficient facts upon which to conclude that money was transferred from a debtor to a defendant and the transfer violated the Uniform Fraudulent Transfer Act. *See Miller v. Rodak*, No. 1:12-CV-0076, 2012 WL 3156538 (D. Utah Aug. 3, 2012); *Pernick v. Computershare Trust Co.*, 136 F. Supp. 3d 1247, 1273 (D. Colo. 2015). The Court finds the reasoning of the decisions applying a more lenient standard to be persuasive and is unaware of any binding precedent to the contrary. Here, both types of fraudulent transfer claims are alleged. As between the theories, there is no

discernable difference in the facts that must be alleged in order to advise the Drywave Parties of the transfer that the Investors believe was fraudulent and why. It is sufficient that the transferor, transferee, amount and approximate time period is disclosed.

The second challenge is that no claim has been stated against S. Howe, Kukekov, or T. Howe because no recovery can be made against them. The remedies available in a fraudulent conveyance action fall into two tiers. The primary remedy is found in C.R.S. § 38-8-109(2) — recovery of the assets, or their value, from the initial transferee or the person for whose benefit the transfer was made. In lieu of that, a creditor may obtain a judgment in the amount against the person who acts with wrongful intent in the amount of one and one-half the value of the asset transferred or the one and one-half of the amount necessary to satisfy the creditor's claim, whichever is less. C.R.S. § 38-8-108(1)(c). Contrary to the suggestions of the Drywave Parties, liability under CUFTA does not grow out of the respective ownership interests of S. Howe, Kukekov, or T. Howe in the transferor or transferee entities. It grows, instead, out of the allegations that S. Howe, Kukekov, and T. Howe intended to hinder, delay, or defraud creditors of Drywave.

**F. Claim 10 — Conspiracy**

Drywave Parties' only basis for dismissal of the conspiracy claim is that it is based on the misrepresentations and fraudulent transfer theories in Claims 1, 2, and 9. Because none of such claims are dismissed and no independent reason is shown for dismissal of this claim, it will proceed.

## V. CONCLUSION

For the foregoing reasons, the Counterclaim Defendants' Motion to Dismiss (**# 96**) is **GRANTED IN PART**. The counterclaim under the Exchange Act (Claim 4) and counterclaim

13

for abuse of process (Claim 7) are **DISMISSED WITHOUT PREJUDICE**. The Motion is **DENIED** in all other respects. The parties have 14 days from the date of this order to file an answer or any motion to amend.

Dated this 28th day of March, 2018.

**BY THE COURT:**

*/s/ Marcia S. Krieger*

Marcia S. Krieger
Chief United States District Judge